UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Joseph Majid, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Federal Bureau | : | Civil Action No. 16-731 (GK) |
| Of Investigation, et al. | : | |
| | : | |
| Defendant. | : | |
| | : | |

### MEMORANDUM OPINION

Plaintiff Joseph Majid brings this lawsuit against Nikki Wallace, his former co-worker at DynCorp International, Inc. ("DynCorp"), the Federal Bureau of Investigation ("FBI"), and two unnamed agents of the FBI, John Doe #1 and John Doe #2 ("the John Doe Agents"). Mr. Majid alleges that while working in Afghanistan as an interpreter for the U.S. military, Ms. Wallace falsely told his supervisors that he was a security risk and potential terrorist sympathizer. He further alleges that this triggered an FBI investigation, and ultimately a campaign of harassment against him by the FBI and the two John Doe Agents. Mr. Majid has brought numerous claims against the various defendants, based on the United States' Constitution, the Privacy Act, 5 U.S.C. § 552(a), various California statutes, and the common law of the state of California.

Presently before the Court is the FBI's Motion to Dismiss or, in the Alternative, for Summary Judgment [Dkt. No. 6] ("MTD" or "Motion"), arguing that the Court should dismiss those claims that Mr. Majid has brought against the FBI or grant summary judgment to the FBI on those claims.   The FBI also argues that if the claims against the FBI are dismissed, the Court lacks jurisdiction to hear the remaining claims and should dismiss the entire action.

Based on the Complaint, the Motion, the Opposition, the Reply, and the entire record herein, the FBI's Motion will be granted in part and denied in part. The constitutional and state law claims against the FBI contained in Counts VI and VIII will be dismissed, but the Privacy Act claims contained in Count V and the remaining claims against the other Defendants will not be dismissed.

## I.   BACKGROUND

### A. Factual Background

Mr. Majid is an American Citizen of Afghan descent who is fluent or proficient in a number of languages other than English, such as Dari, Pashto, Russian, and Turkmen.   Complaint ¶ 1.   Given his language skills he was hired by DynCorp in June of 2012 to serve as a security linguist in Afghanistan, assisting U.S. military personnel.   Id. at ¶¶ 1, 10-11.

Mr. Majid and Ms. Wallace, another DynCorp employee, began working together in Afghanistan in January of 2013. Id. at ¶ 12. Mr. Majid alleges that immediately after they began working together, Ms. Wallace treated him with hostility because he was of Afghan descent and she was jealous that he was being paid at a higher salary than she received. Id. at ¶¶ 12-14. He alleges she spread false rumors about him to their military clients, and filed a false report with their superiors indicating that he was a security risk and potential terrorist sympathizer, which forced him to resign from DynCorp. Id. at ¶¶ 14-15. Mr. Majid alleges that because of this "defamatory" report, his security clearance has an "incident" associated with it, and that he can no longer obtain comparable employment to his position as a security linguist. Id. at ¶ 17.

Mr. Majid alleges that, as a result of these false reports, the FBI began investigating him. Id. at ¶ 16. He alleges that two John Doe Agents have been intrusively surveilling him and implying to his employers that he is a security risk and a potential terrorist. Id. at ¶ 18, 25, 26. He alleges that as a consequence of the FBI investigation he has lost multiple jobs. See Id. at ¶¶ 16, 19.

**B. Procedural Background**

Mr. Majid filed his Complaint on April 19, 2016. [Dkt. No. 1]. In Count I, Mr. Majid alleges that Ms. Wallace's reports to the FBI constitute negligent misrepresentation. Id. ¶¶ 27-34. In Count II-IV, Mr. Majid alleges that the John Doe Agents negligently carried out their investigation, intentionally inflicted emotional distress upon him, and invaded his privacy. Id. ¶¶ 35-45.

In Count V, Mr. Majid alleges that the FBI violated the Privacy Act, by maintaining inaccurate records about him. Id. ¶¶ 46-50. In Count VI, Mr. Majid alleges that the FBI and the two John Doe Agents deprived him of his rights to procedural due process under the United States' Constitution. Id. ¶¶ 51-57.

In Count VIII, Mr. Majid alleges that the two John Doe Agents violated his rights to life, liberty and happiness, to travel freely, and to be free of false stigma. Id. ¶¶ 58-64. Finally, in Count VII, Mr. Majid alleges that all of the Defendants violated Sections 51.7 and 52.1 of the California Civil Code, subjecting him to threats based on his race or national origin and interfering with his right to privacy.

A Summons was issued to the FBI, as well as to the two John Doe Agents, care of the FBI. [Dkt. No. 2-1]. Similarly, a Summons

was issued to Ms. Wallace, care of DynCorp.  Id.  Only the FBI has made an appearance before this Court.[1]

On August 8, 2016, the FBI filed this Motion to Dismiss or, in the Alternative, for Summary Judgment, seeking dismissal of or judgment on those claims that have been brought against the FBI, contained in Counts V, VI, and VII, and arguing that, if those claims are dismissed, the court lacks jurisdiction to hear the remaining claims.   On October 6, 2016, Mr. Majid filed his Opposition. [Dkt. No. 8].  On October 27, 2016, the FBI filed its Reply.  [Dkt. No. 9].

## II.  STANDARD OF REVIEW

### A. Motion to Dismiss

#### 1. Standard for Dismissal under Rule 12(b)(1) for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the

---

[1] The Department of Justice has made clear that it represents only the FBI, as an agency, in this matter and that it does not represent the John Doe Agents. MSJ at 15 n.4.

[plaintiff]." Id.; see also Shuler v. United States, 531 F.3d 930, 932 (D.C. Cir. 2008).

In deciding whether to grant a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the court must "'accept all of the factual allegations in the complaint as true.'" Jerome Stevens Pharmaceuticals, Inc. v. F.D.A., 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) (quoting United States v. Gaubert, 499 U.S. 315, 327 (1991)). Nonetheless, "[t]he plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9, 13-14 (D.D.C. 2001).

### 2. Standard for Dismissal under Rule 12(b)(6) for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A claim is facially plausible when the pleaded facts "allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," but it is not a "probability requirement." Id.

At the Rule 12(b)(6) stage, the court accepts all of the complaint's factual allegations as true and draws all reasonable inferences from those facts in plaintiff's favor. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). In addition to the complaint, the court may consider "other sources," such as "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." Tellabs, Inc., 551 U.S. 308, 322 (2007) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357 (3d ed. 2004) (hereinafter "Wright & Miller))); Maggio, 795 F.3d 57, 62 (D.C. Cir. 2015). The court may take judicial notice of matters of public record. Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (public records are "subject to judicial notice on a motion to dismiss"); see also 5B Wright & Miller § 1357.

### B. Motion for Summary Judgment

Summary judgment may be granted only if the pleadings, the discovery materials, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Arrington v. United

States, 473 F.3d 329, 333 (D.C. Cir. 2006); Fed. R. Civ. P. 56(c).
"A dispute over a material fact is 'genuine' if 'the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party.'" Arrington, 473 F.3d at 333 (quoting Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is
"material" if it might affect the outcome of the case under the
substantive governing law. Id.

The burden is on the moving party to demonstrate the absence
of any genuine issues of material fact. Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986). When a moving party successfully does
so, the nonmoving party must show the existence of a genuine issue
of material fact by providing "specific facts showing that there
is a genuine issue for trial," and "may not rest on mere
allegations or denials" to prevail. Burke v. Gould, 286 F.3d 513,
517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248 (internal
quotation marks omitted). The moving party is entitled to summary
judgment when the nonmoving party fails to offer evidence
sufficient to establish an essential element of a claim on which
it will bear the burden of proof at trial. Celotex, 477 U.S. at
322.

In reviewing the evidence on a motion for summary judgment,
the court views the evidence in the light most favorable to the

-8-

nonmoving party and draws all inferences in her favor.  Johnson v. Perez, 823 F.3d 701, 705 (D.C. Cir. 2016).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment."  Barnett v. PA Consulting Grp. Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (internal quotation marks and citation omitted).  Accordingly, the Court's role is "not [to] determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial."  Id.

## III. ANALYSIS

### A. Count V: Privacy Act Violation by the FBI

Mr. Majid alleges that the FBI maintains records about him that are inaccurate, because they are based on the false and defamatory reports of Ms. Wallace, and he seeks an opportunity to review and correct these records pursuant to the Privacy Act. Complaint ¶¶ 46-50.  The FBI seeks dismissal or, in the alternative, summary judgment on this claim, arguing that the records Mr. Majid seeks from the agency are exempt from the Privacy Act's access provisions.  MSJ at 7-9.

"A principal function of the [Privacy] Act is to require agencies to keep accurate systems of records." Doe v. F.B.I., 936 F.2d 1346, 1350 (D.C. Cir. 1991) (internal citations and quotation

marks omitted).   The Privacy Act requires agencies to make reasonable efforts to ensure the accuracy of the records it maintains about individuals.   Id.   In furtherance of this goal, the Privacy Act grants individuals the right to access agency records that pertain to them, and to request amendment of any records that are inaccurate.  See id. (citing 5 U.S.C. § 552a(d)). "Where an agency denies such an amendment request, the Act grants the individual seeking amendment the right to obtain agency review."  Id. (citing 5 U.S.C. § 552a(d)(3),(g)).   If the agency refuses to amend the record, the individual may then seek judicial review of that determination.  5 U.S.C. § 552a(d)(3), (g).

However, law enforcement agencies may promulgate rules to exempt criminal records systems from these individual access and judicial review provisions, if the records contain "information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual."  5 U.S.C. § 552a(j)(2)(B).  The FBI has exercised this authority to exempt its Central Records System ("CRS") from the individual access provisions of the Privacy Act.[2] 28 C.F.R. § 16.96; Doe, 936 F.2d at 1353.

---

[2] As the FBI notes, making such investigative files available to the subject of an investigation would enable the subject to impede the investigation, by destroying evidence, or intimidating

Records contained in CRS are exempt if "if they constitute law enforcement records within the meaning of the statute. Accordingly, the FBI bears the burden of demonstrating a law enforcement purpose for each record as to which it has claimed exemption in this case." Doe, 936 F.2d at 1353. "[R]ecords kept by a law enforcement agency must meet two criteria in order to qualify as law enforcement records:"

> First, 'the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security . . . .'

> Second, 'the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least a colorable claim of its rationality.' This second requirement is 'deferential to the particular problems of a criminal law enforcement agency'; while it is not met where the agency offers a 'pretextual or wholly unbelievable' basis for a claim that its investigation was rationally related to its law enforcement duty, a reviewing court 'should be hesitant to second-guess a law enforcement agency's decision to investigate if there is a plausible basis for its decision.'

Doe, 936 F.2d at 1353-54 (quoting Pratt, 673 F.2d 408, 420 (D.C. Cir. 1982)) (internal citations omitted).

"When an agency meets both prongs of the Pratt test, the burden shifts to the plaintiff to produce evidence that the

---

potential witnesses, or fleeing to avoid potential arrest.   28 C.F.R. § 16.96(b)(1).

asserted law enforcement rationale for an investigation was in fact pretextual." Id. at 1354.

The FBI argues that Mr. Majid's Complaint makes clear that, to the extent any records about Mr. Majid exist, those records are exempt law enforcement records, and consequently, that he has failed to state a claim upon which relief can be granted.[3]   The FBI notes that Mr. Majid's Complaint identifies the records he seeks as having been created pursuant to an investigation that was itself initiated after information was shared with the FBI that Mr. Majid might pose a "security risk to America." Reply at 4 (quoting Complaint ¶ 53 and citing Complaint ¶¶ 14, 15, 18, 26, 34, 36, 46).   Consequently, the FBI argues that Mr. Majid's Complaint establishes that the records he seeks are "law enforcement records."   The FBI asserts that such law enforcement records are ordinarily contained in "investigative files," which are stored in CRS, an exempt system of records.   FBI's Statement of Material Facts as to which there is No Genuine Issue ("SOMF") ¶ 4 [Dkt. No. 6].[4]   Consequently, the FBI argues that to the extent

---

[3]   The FBI has refused to confirm or deny that Mr. Majid is the subject of an investigation or that it has any files regarding Mr. Majid.   Reply at 5 n.2.

[4]   The SOMF refers to entries in the Federal Register and the Code of Federal Regulations that exempt CRS from the Privacy Act. SOMF ¶¶ 4,5 (citing 68 Fed. Reg. 8671 (Feb. 20, 1998) and 28 C.F.R.

that any records about Mr. Majid exist, they are necessarily law enforcement records stored in an exempt system of records.

There is a major problem with the FBI's argument. Nowhere in the record - not in the Complaint, not in the briefs, not even in the FBI's Statement of Material Facts - does it establish that any and all FBI records about Mr. Majid are located in CRS. While it stands to reason that any such investigative files about Mr. Majid are stored in CRS - because that is the ordinary practice of the FBI - there is nothing in the record that conclusively establishes that such files are not stored in another system of records that is not exempt from the individual access and judicial review provisions of the Privacy Act.

Bailey v. Bureau of Prisons is directly on point. 133 F. Supp. 3d 50, 57 (D.D.C. 2015). In that case, the plaintiff was a prisoner held in a Bureau of Prisons (BOP) facility. Id. at 52. He alleged that BOP had wrongly categorized him as a gang member, resulting in changes in the conditions of his confinement, and had violated the Privacy Act by maintaining records that contained false information about him. Id. at 56. BOP argued that the

---

§ 16.96). Both are matters of public record of which the Court may take judicial notice.

relevant records were of the type regularly stored in an exempt system of records and moved to dismiss his claims. Id. at 57.

The court refused to grant BOP's motion to dismiss, holding that the defendant had produced no evidence that the records the plaintiff sought were actually stored in the exempt system. Id. The court found that the defendants had offered no evidence "whatsoever averring where *exactly* these documents are housed, making it impossible for this Court to determine whether the documents are in fact Privacy Act-exempt." Id. The court concluded that while "[i]t would certainly stand to reason that documents relating to the BOP's investigation of inmate Bailey are housed within [the exempt system]" given BOP's practices, it was "by no means a foregone conclusion" given the lack of evidence. Id.

Similarly, in this case the FBI asserts that any files about Mr. Majid that may exist would be investigative files, and that, as a routine practice, such investigative files are stored in CRS. Just as in Bailey, such "[g]eneralities alone cannot suffice." 133 F. Supp. 3d at 57. Instead, the FBI must come forward with some affirmative evidence, such as sworn affidavits or declarations, to demonstrate that records about Mr. Majid, to the extent they exist, are stored in an exempt system. See Bailey,

-14-

133 F. Supp. 3d at 57; also Antonelli v. Fed. Bureau of Prisons, 591 F. Supp. 2d 15, 29–30 (D.D.C. 2008) (summary judgment granted where the agency provided a sworn declaration that the relevant records were maintained in an exempt system).

The FBI's attempt to rely on Mr. Majid's Complaint to establish that the records he seeks are stored in CRS also fails. Had Mr. Majid's Complaint expressly alleged that the records he seeks are stored in CRS, he may well have pled himself out of a cause of action. See Arnold v. U.S. Secret Serv., 524 F. Supp. 2d 65, 66 (D.D.C. 2007) (dismissing Privacy Act claim where the complaint expressly stated that the relevant records were stored "in the Secret Service Protection Information System USSS.007" and it was undisputed that it was an exempt system of records). But Mr. Majid's Complaint says no such thing; instead, it merely states that he seeks investigative records. Consequently, there is nothing in the Complaint that establishes that the records he seeks are in fact stored in CRS.

Ultimately, it is the FBI's burden to demonstrate that the records Mr. Majid seeks access to are stored in CRS or some other exempt system of records, and it has not done so. Mr. Majid's Complaint states a plausible Privacy Act claim, so the claim cannot be dismissed under Rule 12(b)(6). In addition, the FBI's

-15-

submissions do not establish that there is no genuine issue as to any material fact, and so it is not entitled to summary judgment under Rule 56. Because the FBI has failed to establish that there are actual records about Mr. Majid that are stored in other, non-exempt systems, the FBI's Motion must be denied.

### B. Count VI: Deprivation of Due Process by the FBI

Mr. Majid alleges that he was deprived of due process by the FBI and the John Doe Agents because they failed to provide him an opportunity to rebut the false allegations made by Ms. Wallace. Complaint ¶ 55. The FBI seeks dismissal of this claim as it relates to the FBI, arguing that there has been no waiver of sovereign immunity to hear this claim, and consequently, that the Court lacks jurisdiction. MTD at 9-10.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature." Id. ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction" (internal citations and quotation marks omitted). "A waiver of the United States's [sic] sovereign immunity must be unequivocally expressed in statutory text and

will not be implied." <u>Settles v. U.S. Parole Comm'n</u>, 429 F.3d 1098, 1105 (D.C. Cir. 2005) (internal citations omitted).

Here, neither Mr. Majid's Complaint nor his Opposition to the FBI's Motion identify any statute in which the United States has waived sovereign immunity to allow this Court to hear his claim. Instead, Mr. Majid argues that <u>Bivens</u> supplies the necessary waiver. <u>See</u> Opp'n at 6-8 (citing <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388, 389 (1971)). He is wrong.

In <u>Bivens</u>, the Supreme Court recognized that an implied cause of action exists against federal officials who violate an individual's constitutional rights. 403 U.S. at 389. However, whether a cause of action exists is a distinct question from whether Congress has waived the sovereign immunity of the United States. <u>Meyer</u>, 510 U.S. at 483-84.

<u>Bivens</u> does not, indeed cannot, create the necessary waiver of sovereign immunity; all <u>Bivens</u> does is provide a cause of action against federal officials in their personal capacities. <u>Id.</u> Because an official, who is sued in her personal capacity, is not clothed in the sovereign immunity of the United States, <u>Clark v. Library of Cong.</u>, 750 F.2d 89, 103 (D.C. Cir. 1984), <u>Bivens</u> has nothing to say about the waiver of sovereign immunity. Moreover,

-17-

"Bivens claims are not available against federal agencies." Abdelfattah v. U.S. Dept. of Homeland Sec., 787 F.3d 524, 534 (D.C. Cir. 2015) (citing Meyer, 510 U.S. at 483-86)); Drake v. F.A.A., 291 F.3d 59, 72 (D.C. Cir. 2002) ("It is of course well-settled that Bivens liability cannot be imposed on an agency of the Federal Government."). Accordingly, Mr. Majid cannot rely on Bivens to establish the necessary waiver of sovereign immunity.

As Mr. Majid has failed to establish that sovereign immunity has been waived, the Court lacks jurisdiction to hear Mr. Majid's claim against the FBI under Count VI, and that claim will be dismissed pursuant to Rule 12(b)(1).

### C. Count VIII: Violations of CA Code against FBI

Mr. Majid alleges that the FBI violated Sections 51.7 and 52.1 of the California Civil Code. Complaint ¶¶ 65-71. As with Count VI, the FBI seeks dismissal of Count VIII of Mr. Majid's Complaint, as it relates to the FBI, arguing that there has been no waiver of sovereign immunity to hear this claim. MTD at 10.

As Mr. Majid did with his constitutional claims in Count VI, he argues that Bivens provides the necessary waiver of sovereign immunity. Opp'n at 9-10. That is incorrect for the same reasons discussed above. Accordingly, the Court lacks jurisdiction to hear Mr. Majid's claims against the FBI, alleging violations of

the California statutes, and that claim will be dismissed pursuant to rule 12(b)(1).[5]

### D. Additional Arguments

Finally, the FBI makes a number of additional arguments regarding the absence of jurisdiction, improper venue, and Mr. Majid's request for injunctive relief.

#### 1. Diversity Jurisdiction

The FBI argues that Mr. Majid's Complaint establishes that there is a lack of complete diversity amongst the parties, because his Complaint alleges that both the John Doe Agents and Mr. Majid are residents of California.  MSJ at 12 n.2.

---

[5]    The FBI, on its own initiative, has suggested that the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, might provide the necessary waiver of sovereign immunity. MTD at 10-11 (citing 28 U.S.C. § 2674).  However, the FBI also argues that Mr. Majid cannot avail himself of the FTCA for various reasons, including a failure to exhaust his administrative remedies.  MTD at 10-14 (citing 28 U.S.C. § 2675 (requiring, as a prerequisite to filing suit under the FTCA, that claimants must first present their claim to the agency they allege injured them)).

Mr. Majid appears to disclaim any reliance on the FTCA. Opp'n at 9.  However, to the extent he does bring this claim pursuant to the FTCA, it is undisputed that he has failed to comply with its requirements in 28 U.S.C. § 2675.  For example, the FBI is correct that he failed to exhaust his administrative remedies, and that the Court would have to dismiss his claims on that basis.  See Wasserman v. Rodacker, 557 F.3d 635, 642 (D.C. Cir. 2009) (dismissal of FTCA claim was proper where plaintiff failed to exhaust administrative remedies).

Although the FBI is correct that "complete diversity of citizenship" amongst the parties is required to invoke diversity jurisdiction under 28 U.S.C. § 1332, Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996), its argument fails because it mischaracterizes Mr. Majid's Complaint. Mr. Majid does not allege that the John Doe Agents are citizens of California, only they "work out of [the FBI's] California office." Complaint ¶¶ 3, 4. There is nothing in the Complaint that establishes that the John Doe Agents' duty station is the same as the state of which they are citizens, and therefore this allegation alone cannot establish an absence of diversity.[6]

Since the Court must accept as true Plaintiff's uncontroverted allegation that the John Doe Agents are citizens of a different state, diversity jurisdiction exists as of now.

### 2. Supplemental Jurisdiction

The FBI argues that the court lacks supplemental jurisdiction to hear Mr. Majid's state law claims. MSJ at 12 n.2. Given that

---

[6] The FBI argues that by failing to respond to this argument in his Opposition, Mr. Majid has conceded the absence of diversity jurisdiction. Reply at 2. Given that the FBI's own argument is wholly without merit, the Court will not grant the FBI's Motion on this basis. To the extent that the John Doe Agents exist and are residents of California, that information is entirely within the possession of the FBI and it may introduce such information at any time.

the Court will not dismiss the Privacy Act claims against the FBI, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as the FBI concedes in its Motion. MSJ at 12 n.2.

### 3. Venue

The FBI argues that this Court is an improper venue because, under the FTCA, Mr. Majid should have brought this action in California.   MSJ at 13.   The FBI is correct that the FTCA only authorizes a suit to be brought in the judicial district where the plaintiff resides or where the challenged act or omission occurred. 28 U.S.C. § 1402(b). However, Mr. Majid did not rely on the FTCA in either his Complaint or his merits briefing.   Indeed, given what remains of Mr. Majid's claims once this Opinion issues, none appear to have been brought pursuant to the FTCA.   Accordingly, the FBI's argument that this Court is an improper venue to hear the FTCA claim fails.

### 4. Claims for Injunctive Relief

Finally, the FBI argues that Mr. Majid's request for injunctive relief, contained in Counts II and III of his Complaint, are without merit.   That argument is premature.   The FBI has not sought to dismiss those claims, and therefore, they remain live issues in the case.   Whether Mr. Majid can succeed on the

-21-

underlying claims and what relief he may be entitled to are questions for another day.

## IV.   CONCLUSION

For the foregoing reasons, the FBI's Motion is denied as to Count V and granted as to Counts VI and VII.

Additionally, the parties will be ordered to submit briefing on whether the Court may order the FBI to serve the John Doe Agents with a copy of Mr. Majid's Complaint. See Bivens, 403 U.S. at 390 n.2 (noting that the district court ordered the agency to serve the plaintiff's complaint on the agents who participated in the raid where the alleged misconduct took place).


March 28, 2017

Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF